IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALEXANDER JIGGETTS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-14-103 |
| TAMMY BAILEY, et al. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

Pending is defendants' motion to dismiss or for summary judgment. ECF 9. Although he was advised of his right to oppose the motion and of the consequences of failing to do so, plaintiff has not opposed defendants' motion.[1] No hearing is necessary to resolve the matters pending before the court. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, defendants' motion, construed as a motion for summary judgment, shall be granted.

Plaintiff Alexander Jiggetts is a patient at Spring Grove Hospital ("Spring Grove"), a mental health facility operated by Maryland's Department of Health and Mental Hygiene (DHMC). Plaintiff he claims he has been subjected to forced medication and that defendant Tammy Bailey has forced him to take medication against his will by punishing him when he refused to take it. In addition, he claims Bailey told him he would never leave the hospital if he did not conform and that on one occasion she provided him with a "drug cocktail" that made him lose consciousness. ECF 1 at p. 1.

Plaintiff also claims that Bailey and Dr. Mirsa have made inappropriate sexual advances toward him which he has shunned. He alleges that both of these defendants are retaliating

---

[1] Plaintiff filed three amended complaints, none of which reiterated the forced medication issue raised in the first complaint. ECF 3, 5, and 6. Additionally, plaintiff has filed a new civil action in this court concerning the legality of his confinement without mention of an allegation he was forced to take psychotropic medication against his will. *See Jiggetts v. State of Maryland*, Civ. Action No. JFM-14-2486 (D. Md.). Thus, the court is satisfied that plaintiff is aware of this pending matter and has abandoned this claim in light of his transfer to another unit in the hospital where he is no longer under the care of defendants. *See* ECF 9 at Ex. 3 and 6 (affidavits of defendants).

against him for turning down their sexual advances and that among the ways they are retaliating, is to over-medicate him or medicate him against his will.[2]  *Id*. at pp. 1 and 4.  Because plaintiff is self-represented his complaint was liberally construed by the court to state a possible due process claim.  *See Haines v. Kerner*, 404 U.S. 519, 521 (1972); *see also Johnson v. Silvers*, 742 F. 2d 823, 824 (4th Cir. 1984) (allegation of forced medication states cognizable claim making dismissal improper).[3] .

Defendants provide the following background regarding plaintiff's criminal charges and subsequent commitment to Spring Grove.  There is a pending criminal charge against plaintiff for telephone misuse and making a false statement to a police officer in the District Court for Baltimore City.  ECF 9 at Ex. 1.  On November 21, 2013, the state court issued an order committing plaintiff to the DHMH for an evaluation of his competency to stand trial.  *Id*. at Ex. 2.  Pursuant to the order, plaintiff was admitted to Spring Grove on December 3, 2013.  *Id*. at Ex. 3 (affidavit of Gali Mirsa, M.D.).

On December 10, 2013, Dr. Ashley Stewart submitted an evaluation to the Honorable George Lipman which indicated that plaintiff refused to participate in the evaluation.  *Id*. at Ex. 4.  Additionally, Dr. Stewart noted that it was clear from "collateral documentation and [plaintiff's] presentation during th[e] brief encounter that his symptoms of mental illness currently impair his rational and factual understanding of the charges and proceedings against him and his ability to consult with an attorney."  *Id*.  at p. 4.  Stewart concludes that, in her

---

[2]  The complaint contains numerous fantastic allegations regarding general conditions at Spring Grove.  These allegations will not be addressed by the court as they are clearly a product of delusional thought.

[3] "[P]leadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice."  *Gordon v. Leeke*, 574 F. 2d 1147, 1151 (4th Cir. 1978) citing *Rice v. Olson*, 324 U.S. 786, 791-92 (1945); *Holiday v. Johnston*, 313 U.S. 342, 350 (1941)

opinion, plaintiff is not competent to stand trial and is dangerous due to his mental disorder. *Id*. The state court accepted Stewart's opinion and committed plaintiff to Spring Grove. *Id*. at Ex. 5.

Defendants state that Dr. Mirsa prescribed psychiatric medications[4] for plaintiff's treatment upon his December 3, 2013 admission. Plaintiff consistently refused to take the prescribed medications, but occasionally agreed to take medications on an emergency basis. ECF 9 at Ex. 3 and 3A – 3D. As an example, defendants state that on December 27, 2013, plaintiff became agitated when staff moved another patient's belongings into his room. Plaintiff threw the property back into the hallway, cursed at Tammy Bailey., and demanded a private room. In response, Bailey offered him oral medication on an emergency basis and plaintiff accepted it. *Id*. at Ex. 6 (affidavit of Tammy Bailey) and Ex. 6D. Plaintiff accepted medication on a similar basis on December 29, 2013, and January 2, 2014. *Id*. at Ex. 6 (Bailey affidavit) and 6E – 6F.

Defendants state that on one occasion plaintiff refused oral medication on an emergency basis, but accepted an intramuscular injection. The incident occurred on January 14, 2014, when plaintiff began throwing his roommate's property around the room and rejected all efforts by staff at redirection. They state plaintiff repeatedly told the charge nurse, "I don't want to have sex with you," and called Dr. Mirsa "Ms. Royston." When Dr. Mirsa offered plaintiff an intramuscular injection of emergency medication, plaintiff accepted it and no physical restraint was used to administer the drug. *Id*. at Ex. 3 and 3H. On January 15, 2014, plaintiff was transferred to a different unit at Spring Grove. Thereafter, defendants were no longer involved in his treatment. *Id.* at Ex. 3 and 6. Defendants assert that during the time plaintiff was under their

---

[4] Dr. Mirsa prescribed risperidone to treat plaintiff's psychosis and haloperidol, diphenhydramine and lorazepam to treat his agitation. ECF 9 at Ex. 3, p. 2. Risperidone and Haloperidol are antipsychotic medicines that work by changing the effects of chemicals in the brain. *See* http://www.drugs.com. Diphenhydramine is an antihistamine and lorazepam is a benzodiazepine that affects chemicals in the brain that may become unbalanced and cause anxiety. *See id*.

care there was never a need to utilize Spring Grove's procedure for administering medication without plaintiff's consent, and they deny forcibly medicating him. *Id*.

### Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Involuntarily committed mental patients retain a constitutionally protected liberty interest in remaining free from bodily restraint. *See Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). That liberty interest arises in cases where forcible administration of antipsychotic drugs are at issue and requires evidence of an important government interest to "outweigh the defendant's liberty interest in being free from unwanted medication, such that the Due Process Clause will allow the government to medicate [him] against his will." *U.S. v. Evans*, 404 F. 3d 227, 234 (4th Cir. 2005), citing *Sell v. United States*, 539 U.S. 166, 185 (2003).   The Supreme Court announced differing standards to test the constitutionality of forced medication depending upon whether the medication is for purposes of controlling a recalcitrant prisoner, *see Washington v. Harper* 494 U.S. 210, 227 (1990), or is for purposes of medicating an incompetent patient so that he or she may stand trial, *see Sell*, 539 U.S. at 179.

Defendants assert that there was never any need to resort to the procedural mechanism in place for forced medication in the instant case because plaintiff consented to emergency administration of medication. There is no evidence that plaintiff was combative during the administration of the medication at issue. Rather, his documented behavior following the medication indicates he is calmer and less anxious. It does not appear that the administration of medication in the instant case was given in any circumstance other than emergent ones where plaintiff presented a possible danger to others given his resistance to redirection. While plaintiff's agreement to take medication may have been grudgingly given,[5] it was nonetheless given. The allegations in the complaint as amended appear to be grounded in plaintiff's delusional thought process, which is also consistently evidenced in the record of his interactions

---

[5] *See* ECF 9 at Ex. 6E at p. 1 ("I will take the fuckin medication, but you're going to pay").

with staff. Thus, this court is satisfied that the medication provided to plaintiff did not run afoul of his constitutional right to due process.

A separate order granting defendants' motion for summary judgment follows.



   August 21, 2014                     /s/
Date                                  J. Frederick Motz
                                      United States District Judge